HESS v. DENMAN LUMBER CO.
(No. 2157.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 2, 1920. Rehearing Denied Feb. 12, 1920.)

1. NEGLIGENCE ☞6—BREACH OF DUTY IMPOSED BY LAW ACTIONABLE.

One who negligently breaches a duty imposed upon him by a valid law is liable to a person injured by such breach for the pecuniary consequences suffered thereby.

2. CONSTITUTIONAL LAW ☞276—MECHANICS' LIENS ☞312—STATUTE REQUIRING OWNER TO CONTRACT WITH BUILDER TO GIVE A BOND VOID BEING INTERFERENCE WITH LIBERTY OF CONTRACT.

Rev. St. 1911, art. 5623, as amended by Acts 1915, c. 143 (Vernon's Ann. Civ. St. Supp. 1918, art. 5623), requiring owner to contract with the builder to give a bond conditioned as required by article 5623a, as added by Acts 1915, c. 143 (Vernon's Ann. Civ. St. Supp. 1918, art. 5623a), held void, being an interference with the law of liberty of contract.

3. MECHANICS' LIENS ☞118, 149(1)—MATERIALMAN WHO HAS NOT FILED ITEMIZED CLAIM NOR GIVEN NOTICE CANNOT RECOVER FROM OWNER.

Materialman who has furnished material to contractor, and between whom and owner there, is no relation of creditor and debtor, and who did not give owner written notices of the items of material furnished to contractor and how much there was due and unpaid on bill of material, and who did not file itemized account of claim in office of county clerk, as required by Rev. St. 1911, arts. 5623 and 5632, cannot recover balance due on such material from owner, who has paid contractor all that was due him after waiting a reasonable time after completion of the building, and who had no notice of materialman's claim; owner being under no legal relation to the materialman selling the contractor so as to render him personally liable for contractor's debt.

4. MECHANICS' LIENS ☞3 — MATERIALMAN'S LIEN LAW JUSTIFIED.

The materialman's lien law is justified upon the ground that the material for which the lien is sought has been converted into a part of the realty and has increased the value of the realty by becoming a part thereof.

5. MECHANICS' LIENS ☞312—LAW REQUIRING OWNER TO MAKE COMPULSORY CONTRACT WITH CONTRACTOR FOR BOND NOT WITHIN POLICE POWER.

The economic advantage of the owner, if any, of having the lien satisfied by the bond would not justify the exercise of the police power requiring him to make a compulsory contract with the contractor to give a bond.

Appeal from Camp County Court; C. E. Bryson, Judge.

Suit by the Denman Lumber Company against Aubrey Hess. Judgment for plaintiff, and defendant appeals. Reversed and rendered for defendant.

The appellant was the owner of a lot in Pittsburg, Tex., upon which he desired to build a two-story frame residence to be occupied as a homestead by himself and his family. On April 26, 1917, appellant and his wife entered into a written contract with J. A. Knight by the terms of which J. A. Knight contracted and agreed to build the residence and to furnish all the lumber and material required for that purpose; the appellant to pay J. A. Knight $4,500, as follows, $1,000 cash upon the completion of the building, and a promissory note for $3,500 payable in five annual installments of $700 each on April 20th of each year, and to secure the payment of the note a mechanic's and materialman's lien was to be given on the lot and improvements. The terms of the contract were fully complied with by the appellant and his wife, and J. A. Knight duly registered his lien in the county clerk's office. J. A. Knight made an assignment of the contract and transferred the note to Frank Davis on April 26, 1917. In the terms of the assignment of the contract Frank Davis was to pay J. A. Knight the $3,500 called for in the note as follows:

"Eighty per cent. of the value of the work done and material furnished as arrived at at intervals as he may deem it safe to do so, such payment to be made upon the estimates approved by the architect and G. A. Hess, the owner"

(218 S.W.)

—and the entire amount to be due upon the completion and acceptance of the building by the owner. This transfer was duly acknowledged and placed of record in the county clerk's office. The appellee sold and delivered to J. A. Knight lumber and other building materials which were used by J. A. Knight in construction of the building to the amount of $2,205.92, and of this amount J. A. Knight failed to pay the appellant the sum of $305.92. The appellee brought the suit against the appellant for the $305.92 in the nature of an action for damages for a tort in negligently failing—

"to reduce the contract made between him and the said J. A. Knight for the erection of said building to writing and to file it in the office of the county clerk of Camp county, and his further failure and refusal to require of the said J. A. Knight a written bond with good and ample sureties in a sum at least equal to a three-fourths of the contract price of the building, payable and conditioned for the faithful performance of his contract and guaranteeing the payment of the value thereof to all persons, firms, and corporations who furnish any materials used in said building to the said contractor."

It was further alleged that J. A. Knight, though requested, had failed to pay the amount due, and that J. A. Knight was insolvent. The defendant answered by demurrer, denial, and specially that he had no notice that J. A. Knight was indebted to the plaintiff and that the plaintiff never fixed a lien as authorized to do. There was a trial before the court without a jury, and a judgment for the plaintiff. The court filed conclusions of fact and of law. The court's findings are that no bond was executed and delivered to G. A. Hess and wife by J. A. Knight for the faithful performance of the contract according to its terms as required by law; that J. A. Knight is insolvent; that the plaintiff did not attempt to comply with articles 5623 and 5632 of the Revised Statutes by giving to G. A. Hess written notices of the items of building material furnished to the said Knight and how much there was due and unpaid on the bill of material furnished to the said Knight, and did not within 90 days after the indebtedness accrued file in the office of the county clerk of Camp county an itemized account of the claim; and—

"9. That upon the completion of said house by the said Knight the said G. A. Hess accepted the same and paid to him the balance of the sum of $1,000 cash consideration then owing to the said Knight under the terms of said contract. That at the time of the said final payment by the said Hess to the said Knight the said Hess had never received any notice from plaintiff of the amount of any indebtedness owing by the said Knight to the plaintiff for material furnished, nor that the plaintiff was looking to the said Hess for the payment of any sum so owing by the said Knight to the plaintiff; and at no time thereafter up to the filing of this suit did plaintiff ever so notify the said G. A. Hess or make any demand upon him for the payment of any balance owing by the said Knight to plaintiff for material furnished for the construction of said building. That more than 90 days had elapsed after the acceptance of the said building by the said G. A. Hess and this final settlement with the said Knight for the construction of same before this suit was filed. That the said G. A. Hess fully complied with the terms of said contract by executing and delivering to the said Knight said note for $3,500 and by paying to him the $1,000 in cash mentioned as a part of the consideration for the construction of the building, and that the said G. A. Hess does not now and did not at the time of filing this suit owe the said Knight anything or any sum for the construction of the building."

The court concluded that the defendant, G. A. Hess, was guilty of negligence in failing to require the contractor, Knight, to make and execute a bond, and enter personal judgment against G. A. Hess for the amount sued for by the appellee.

Bass & Engledow, of Pittsburg, for appellant.

J. M. Burford, of Mt. Pleasant, for appellee.

LEVY, J. (after stating the facts as above). The lumber company undertakes to hold the owner of the building personally liable for the unpaid balance of the account for material furnished to the contractor. The suit is based upon the alleged neglect to take a bond of the contractor as required by Acts 1915, p. 223. As applicable here, article 5623 of the act reads:

Any "owner * * * shall cause to be executed a written contract for such erection, repair or improvement and cause the same to be filed with the county clerk of the county where the property is situated, and shall also cause to be executed and filed with the said county clerk before the work is begun, a good and sufficient bond by said contractor, conditioned as hereinafter provided; and when said bond and contract shall be so executed and filed the said owner, railroad company, its agent or receiver, shall in no case be compelled to pay a greater sum for or on account of labor performed, or material, machinery, fixtures or tools furnished, than the price or sum stipulated in the original contract between such owner and contractor."

It is further provided by article 5623a that—

The bond that the owner of the building "shall take from every contractor" shall be conditioned for "the true and faithful performance of the contract, and the payment of all subcontractors, workmen, laborers, mechanics and furnishers of material by the undertaker, contractor, master mechanic or engineer. The said bond to be made in favor of the owner, subcontractors, workmen, laborers, mechanics and furnishers of material as their interest may appear, all of whom shall have the right to sue upon said bond, * * * and it shall guarantee the

payment of such claims, regardless of whether or not they are secured by any lien."

[1] This law is by its express terms cumulative of the law authorizing any person furnishing material or doing labor on any house or building to secure and fix a lien on the house within 90 days, as the statute provides. As a rule, where a valid law imposes the duty on a person, where there has been a negligent breach of that duty pecuniary consequences are recoverable by law by the party injured for a breach or failure to perform that duty. And the pertinent question arises of whether or not the owner of the building can be held liable in tort, as pleaded, for the failure to procure a bond from the contractor for payment of the contractor's obligation to materialmen. It cannot be said that the act in question undertakes to regulate the occupation of a contractor by requiring him to give a bond before he can lawfully pursue the business. Nor does the act forbid any person from contracting with the contractor that has not given a bond. If it had been so, probably the Legislature would be within its authority in enacting the law under police powers.

[2] But the law requires the owner to contract with the contractor to give a bond. It is compulsory contract purely. We think that it is beyond the power of the Legislature to require an owner to contract with the contractor to give a bond, as done in this very act, because it is interference with the law of the liberty of contract. If the owner does contract to have the contractor give a bond, he is at liberty to do so as a subject-matter of contract; but if the owner does not so contract, a personal judgment cannot be rendered against him for not requiring the bond of the contractor..

[3] The material here was sold to the contractor in the ordinary course of trade, and the relation of creditor and debtor did not exist between the materialman and the owner. The owner of the building paid the contractor all that was due him after waiting a reasonable time after the completion of the building, and he had no notice of the claim of the materialman. Why should the owner be required to pay twice for the material? The materialman had the legal right under the same law to fix a lien for his claim, and he neglected to do so. He was not by the law deprived of any remedy to enforce payment for the money due him for material furnished the contractor.

[4, 5] The lien law is justified upon the ground that the material for which the lien is sought has been converted into a part of the realty and has increased the value of the realty by becoming a part thereof; but the feature of the act requiring a compulsory contract on the part of the owner and contractor to give a bond is quite a different thing. The owner of the building is under no legal relation to the materialman selling to the contractor so as to render him personally liable for the debt of the contractor. And the economic advantage to the owner, if any, of having the lien satisfied by the bond would not justify the exercise of the police power requiring him to make a compulsory contract with the contractor. The cases cited by the appellee do not, we think, control the case, and we do not follow them. This case we intend to be expressly limited to that part of the act in question applying to individuals, and not corporations and municipalities.

The judgment is reversed, and judgment is here rendered in favor of the appellant.